GEORGE THOMPSON, AS EXECUTOR AND TRUSTEE OF CHARLES WATERS, DECEASED, APPELLANT, *v.* EMILY F. CONWAY AND OTHERS, AS EXECUTORS AND TRUSTEES OF MARTIN WATERS, DECEASED, RESPONDENTS.

*Legacy — when vested — when it passes to the children of the legatee, on his death before the time prescribed for its payment.*

The defendants' testator died in 1871, leaving six children, all of full age except the youngest, Frances. One child, Charles, died in 1872, leaving a son and daughter, his only children and heirs-at-law. By his will, the testator devised all his estate to his executor, to manage the same and collect the rents and income thereof until the death or majority of Frances, and to divide and apportion the said income among his children, as therein provided. He appointed two trustees to receive $600 annually and pay the same, or a part thereof, to the use and benefit of his son Charles. Upon the death or majority of Frances, he directed his executor to divide his estate into thirty-four equal parts or portions, and give six of such parts to the said trustees to be retained or paid to and for the use, benefit and proper maintenance of his said son Charles until he should acquire habits of industry, steadiness and frugality, when and whereupon they might pay the whole sum, or any balance then

undisposed of, to his son Charles, to be used and disposed of as might be right and proper.

*Held,* that the legacy given to Charles was a vested one, and that upon his dying during the minority of Frances his interest therein passed to his children.

Appeal from a judgment, entered upon the trial of this action at Special Term, dismissing the complaint upon the merits.

*Daniel T. Robertson,* for the appellant.

*Wm. E. Fullerton,* for the respondents.

Brady, J.:

This action was brought to compel an accounting and payment by the respondents, as executors and trustees under the will of Martin Waters, deceased, of the legacy and bequest given by the will of the latter to Charles Waters.

The testator died in February, 1871, leaving him surviving five children, all of whom were of full age except Frances.

Charles Waters, on behalf of whose heirs this action was brought, died in November, 1872, leaving a son and a daughter his only children and heirs-at-law.

On the trial it was conceded that the facts alleged in the complaint were true, the only question in dispute arising under the will of Martin Waters as to its true interpretation in reference to his son, Charles, and the court found that the representatives of the latter were not entitled to the relief which they sought. The will devised to his executors all his estate for the uses and purposes specified with full power to convert all his personal estate, and all the rents of his real estate, into safe paying securities; and to apportion and pay therefrom yearly, and every year, the sums, or portions thereof, to his children, respectively, from time to time as directed and required by the will, and to continue to pay the same until his youngest daughter, Frances, if she should survive, should have attained the age of twenty-one years ; and if she did not survive to such age, then until the time of her decease. By the second clause of his will he said: "And I do hereby specify the division and apportionment, and I do hereby direct my said executors to divide, apportion, set off and transfer and pay the same to my said children, respectively, and to do the same in the following manner."

He then proceeded to name the portions of each child, directing the payment to each of them per annum, giving to Charles Waters $600 per year and constituting his daughter, Sarah Lynch, and a Mr. Brennan his trustees for the purpose of receiving the yearly allowance given to his son, Charles, which they were to pay to his use and benefit, or a portion thereof, and in such manner as they might deem proper.

By his third clause he directed that if Frances, his daughter, should survive and attain the age of twenty-one years, or in case of her decease prior thereto, his executors, or survivors of them, should dispose of his real and personal estate and collect all the moneys derived therefrom, and then divide and apportion the whole amount into thirty-four equal parts or portions, and pay over to his children certain portions, including his son Charles, to whom he gave six of such equal parts, which he further directed to be in like manner set off and paid in the first instance to his trustees already mentioned for the sole use and benefit of his son Charles, the same to be retained or paid to and for the use, benefit and proper maintenance of his said son until he should acquire habits of industry, steadiness and frugality, when and whereupon the said trustees might pay the whole sum or balance then undisposed of to his son Charles, to be used and disposed of as might be right and proper.

The learned justice in the court below, seems to have disposed of this case chiefly upon the proposition that the testator intended that the heirs of his son Charles, after the death of the latter, should not participate in the annuity given to Charles during the minority of Frances, and that such intention indicated the further intention to exclude the heirs of Charles from any participation in the estate. In other words, that it was the intention of the testator that the heirs of Charles, if he died during the minority of Frances, were not to succeed to the legacy which was given him in case he survived, or she arrived at the age of twenty-one years during his life. This is regarded as a view of the will, which its provisions, considered together, does not at all justify.

It was clearly the intention of the testator to confide to the trustees named by him, the control of the annuity given to Charles during the minority of Frances, and that seems to have been pre-

dicated of his conviction that his son was not distinguished either for habits of industry, steadiness or frugality. It is true that in that part of the third clause which makes the division, the word "heirs," relating to the portion set apart for Charles, is not used; but it will be perceived on a perusal of the whole will, that no disposition is made of any remainder which might by any possibility be left, so that the portion set apart for Charles, if the construction placed upon it by the learned judge below is sustained, is not appropriated by it. It may be presumed to have been fairly within the intention of the testator to provide for the family of Charles, in the absence of anything to the contrary contained in the will; and more particularly because, from his convictions of the habits of his son, he must have forseen that he would be personally of little service in supplying them with their wants. This is evidenced, indeed, by the conclusion of the third clause, by which the testator, even if all the circumstances necessary to the payment of the portion set apart happened, authorized a delay in the payment of it to him, and the use of it for his maintenance, until he acquired the habits indicated ; when the trustees were authorized to pay the whole sum, or whatever remained undisposed of, to him.

These features of the will, when considered with reference to the fact that there is no gift of the rest and residue of his estate, seem to make it clear that in the testator's mind, when the will was signed by him, he regarded his whole estate disposed of, and to the persons named by him as the objects of his bounty, and for the sums stated.

The gift of the legacy of $600 per annum, therefore, followed by the directions to pay over to Waters his share of the estate on the death or attaining of her majority by Frances Waters, operated as an absolute gift of the fund, which, on the death of Charles Waters, passed to his personal representatives, subject to the execution of the trusts in favor of his children. (*Paterson* v. *Ellis*, 11 Wend., 260; *Hatch* v. *Bassett*, 52 N. Y., 362.)

The law favors the vesting of estates, and not the contrary; and it seems to be well settled that when there is a gift of a legacy, a subsequent and independent direction for the payment on the happening of an event named does not defer the vesting of the legacy, but only postpones the payment; and, if the legatee die, therefore,

during the trust term, his representatives are entitled to the legacy. (*Loder* v. *Hatfield,* 71 N. Y., 96.)

It should be borne in mind that although an intention to disinherit an heir, when expressed in plain and unambiguous language, must, by the law of the land, be carried out whenever the courts are called upon for that purpose; yet nevertheless, such a design will not be imputed to a testator by implication, nor will it be maintained when he uses language capable of a construction to the contrary, though doubtful in its character. In other words, the courts do not favor the process of disinheriting an heir, and will avoid such a result unless the intention to accomplish it by the testator is clearly expressed. (*Low* v. *Harmony,* 72 N. Y., per RAPALLO, J., 414.)

The conclusion from these views is, that the learned justice in the court below erred both on the question of intention and construction, and that the plaintiffs are entitled to succeed to the rights which were acquired by their testator, Charles Waters, under the will. Ordered accordingly.

BARRETT and DANIELS, JJ., concurred.

Judgment reversed.